UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Donna Duke-Koelfgen, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.: 5:22-cv-01010-JKP-ESC |
| | § | |
| Alamo Community College District | § | |
| (AKA Alamo Colleges District), | § | |
| Defendant. | § | |

## DEFENDANT ALAMO COMMUNITY COLLEGE DISTRICT'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Alamo Community College District ("ACCD"), also known as the Alamo
Colleges District ("ACD"), hereby files its Motion for Summary Judgment. In support thereof,
Defendant would show the Court as follows:

### I.      INTRODUCTION

1.      Plaintiff, a faculty member at San Antonio College, alleges that her First
Amendment rights were violated when she was issued progressive discipline (a) for
communicating unprofessionally with college administrators to advocate for or request that certain
students in her class be given AlamoPromise funds which are reserved for high school students
funds; (b) for being late for submitting Student Learning Objectives ("SLOs") and complaining
about completing SLOs which are required by the Texas Higher Education Coordinating Board;
(c) for complaining about the college using the eLumen system for documenting SLOs.

2.      ACCD—a governmental entity and political subdivision of the State of Texas—is
entitled to summary judgment here because the initial threshold question in this case is one of law
and for the Court: whether Ms. Duke-Koelfgen spoke in connection with her duties as a public
employee or as a citizen. *Connick v. Myers*, 461 U.S. 138, 148, n7, n10 (1983) ("The inquiry into

the protected status of speech is one of law, not fact.") (determination of whether speech is on a matter of public concern is a question of law); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (holding that the First Amendment does not protect public employees' speech when it is made pursuant to their official duties). Since Ms. Duke-Koelfgen spoke in connection with her duties as a public employee, no genuine dispute as to any material fact exists, and ACCD is entitled to judgment as a matter of law.

3.      Duke-Koelfgen's First Amendment violation claim fails because each instance of her speech that underlies her claim was made (1) pursuant to her job duties as a public employee, not as a citizen, and (2) on a matter not of public concern. Thus, Duke-Koelfgen's speech is not protected under the First Amendment and her claim fails as a matter of law. Additionally, should the Court reach the issue, Plaintiff's claim must also fail because ACCD's interest as an employer outweighs Plaintiff's interest in her speech.

## II.      STATEMENT OF UNDISPUTED FACTS

*About ACCD*

4.      ACCD is a college district established under Chapter 130 of the Texas Education Code and a governmental entity and political subdivision of the State of Texas. See Tex. Educ. Code §§ 130.0011, 130.162. ACCD is comprised of five junior colleges, including San Antonio College. All employees are employees of ACCD and not of the individual colleges. Hence, ACCD is the employer in this case. Ex. A, Decl. of R. Cavazos.[1]

*Duke-Koelfgen's Employment and Job Duties with ACCD*

5.      Duke-Koelfgen has been an employee with ACCD since 1993 when she joined the San Antonio College as a temporary faculty member in the English Department.

---

[1] Ms. Cavazos's Declaration is made pursuant to 28 U.S.C. § 1746.

6.      At the time she filed her Original Complaint, Duke-Koelfgen was a full-time faculty member as an associate professor in San Antonio College's English department. As of the date of this Motion, Duke-Koelfgen continues to hold the same full-time faculty position.

7.      Full-time faculty members at ACCD are professional educators that are subject to the policies of ACCD's Board of Trustees, including the Faculty Code of Professional Ethics. Ex. A-2, Job Description; Ex. A-3, Code of Professional Ethics. The main categories of job duties for full-time faculty members include: (1) managing classes and learning environments, (2) delivering effective instruction, (3) assessing student learning, (4) promoting continual improvement as part of the cycle of teaching and learning, (5) supporting learning through student engagement, (6) providing student advisement, (7) pursuing professional development, and (8) participating collegially in department and ACCD activities. Ex. A-2. In addition, full-time faculty must "participate in the shared governance process to ensure policies and procedures remain focused on maintaining high standards while providing appropriate support for student needs." *Id*.

***ACCD's Written Progressive Discipline Letters to Duke-Koelfgen & the Speech at Issue***

   ***March 5, 2021 Letter***

8.      On March 5, 2021, Duke-Koelfgen was issued a Step 2-Written Reprimand ("March 2021 Letter"). Ex. A-4. The instances of speech addressed in the March 2021 Letter are:

> **i.      Emails of February 10 and 12, 2021 to ACCD's Dean of Student Success Dr. Tiffany Cox, San Antonio College President Dr. Robert Vela, Vice President of Student Success Dr. Lisa Alcorta, and ACCD General Counsel Ross Laughead. Ex. A-5, (ACCD000182-83).**

9.      The email exchange—with the subject line "American Literature 1 Class"—began with Duke-Koelfgen's request to Dean Cox, Dr. Vela, and Dr. Alcorta to assist one of Duke-Koelfgen's students with registering for her American Literature 1 class. Exs. A-4, A-5. On

Wednesday, February 10, Duke-Koelfgen replied to Dean Cox's email "this does not provide a solution for Robert this semester; it just throws the blame on him. Again, it is a problem in the system. Unless a class is part of a degree plan, students can't take it . . ." Ex. A-5. Her reply continues that financial aid does not pay for a course that will not transfer, thus, ACCD should allow Robert to use AlamoPromise funds for her American Literature class and others like it so that students do not need to switch degree plans to take her class. *Id*. She ends the email with "This very nice email does not solve the problem—not Robert's problem and not the problem for 'access to literature course for all students.'" *Id*.

10.     On Friday, February 12, Duke-Koelfgen sent an email to Dr. Vela, who at the time was the President of San Antonio College, on the same issues with the subject line "The bigger solution" which excerpted the Texas Administrative Code at provisions on Core Curriculum for Texas's higher education institutions. Duke-Koelfgen wrote that "[t]he Core 10 Communication category must be expanded to nine credits to include a literature course of the students choosing. This change is the only way to ensure students their legal right to educational opportunity . . ." She continues that the core curriculum must be changed in the next legislative session because the current form disenfranchises students and "deprives students of the necessary skills and knowledge to complete all college-level courses." *Id*. Duke-Koelfgen ended her email to Dr. Vela with "Now take care of Robert. Enough passing the buck around . . ." *Id*.

11.     Again, on February 12, 2021, Duke-Koelfgen emailed ACCD's general counsel, Ross Laughead, to seek relief for the same student "IMMEDIATELY, THIS SEMESTER, and a solution to the flaw in the system by fall 2021" by asking Mr. Laughead to "intervene in this situation to provide AlamoPromise funds" to the student. She notes that "[a] U.S. military veteran who cannot take an American Literature course is the height of dysfunction." *Id*. Duke-Koelfgen

advises Mr. Laughead to "consult with Lumina.[2] Perhaps they will see the error of their ways." She then threatens to file a complaint with the department of education. *Id.*

> **ii.     Emails of February 11, 2021 to Dr. Jothany Blackwood and Dr. L. Lenny Irvin Regarding eLumen Deadlines. Exs. A-4, A-5.**

12.     On February 9, 2021, Dr. Blackwood emailed all ACCD faculty and chairs that failed to submit mandatory assessments for ACCD's accreditation on ACCD's eLumen platform on time for the Fall 2020 semester. Exs. A-4, A-5. She provided details for a Zoom "SLO Completion Information Session." *Id.* All faculty that missed the deadline were required to attend the Zoom meeting to "review why we assess, how the information is used to support the goals of the college, and what resources are available [to faculty]." *Id.* On Thursday February 11, 2021, Duke-Koelfgen sent three (3) reply-all emails in response to Dr. Blackwood's email, including her direct supervisor, Dr. L. Lennie Irvin, interim chair of the English department. *Id.*

13.     First, Duke-Koelfgen replied at 5:46 pm that she had hit the wrong button and that she was "not meeting with anyone" because Dr. Blackwood or Dr. Irvin should have told her that she just clicked the wrong button. *Id.* She ended the email with "Answer this: why are we the only college doing elumen?" *Id.*

14.     Second, Duke-Koelfgen replied at 5:51 pm advising Dr. Blackwood and Dr. Irvin of issues with the eLumen platform and to "[e]xtend the deadlines for final grades and elumen to avoid future errors." *Id.* She then wrote that "[u]nrealistic deadlines constitutes harassment" and "[d]on't lay it at the feet of faculty. We're sick of administrators gaslighting us on money and policies. That is not leadership." *Id.*

---

[2] Duke-Koelfgen is referencing the Lumina Foundation, a non-profit that develops resources for educational standards and diversity.

15.     Third, at 6:18 pm, Duke-Koelfgen replied again that she had an ADA accommodation for cancer and spent a week in intensive care last semester, after which she cleaned up her Canvas and caught up on grading. She advised Dr. Blackwood and Dr. Irvin that:

> The deadlines for final grades and elumen should be the Wednesday after finals, not the Monday. Leadership is ineffective and impotent if that change can't be instituted. The pandemic has pushed everyone to the edge. I want an apology from both of you and a simple acknowledgement that I accomplished the impossible last semester and I will address any elumen issues from last semester when I am done with Quality Matters training. Faculty do not receive enough support from administrators. Reflect on mistakes administrators make before requiring meetings left and right. Faculty are actually busy teaching. Without them, there is no college. Pull your head up from reports and start seeing faculty as human beings just as you ask us to see our students.

> *Id*.

### iii.     Conduct and Comments on March 3, 2021 Zoom Call. Ex. A-4.

16.     Duke-Koelfgen appeared at an ACCD internal Zoom call on March 3, 2021, organized for the faculty and hosted by Dean Franc Solis. *Id*. ACCD's March 2021 Letter noted that Duke-Koelfgen made the following comments:

> I've listened to you, while I was busy grading, and you haven't said a word, all you have done is mansplaining. So now, you're going to listen to me (while pointing [her] finger at the Dean through the screen). You see you don't treat the faculty with respect. You don't understand. SLOs are not as important as grades. Grades should be due on Tuesday and SLOs and Wednesday, but YOU don't think….No, now you listen to me. I listened to you, now you're going to hear what I have to say. You could have done this differently. You could have had one group with those of us who know what we did wrong, have fixed it and let us move one. Like me, I've met with my Chair and have corrected my errors. Instead, you wasted my time, because you don't respect me, because you don't think (mocking by putting [her] finger to [her] head).

> *Id*.

17.     Duke-Koelfgen interrupted Dean Solis a second time to say: "Administration is always wanting to think of students but they don't think of faculty. We are human too, and deserve

consideration, therefore grades should be extended to Tuesday and SLOs to Wednesday. I DON'T WANT YOUR EXCUSES, JUST MAKE IT HAPPEN." *Id.*

18.     Duke-Koelfgen also told Dr. Conrad Krueger, Dean of Academic Success, on the call that she knew she "was going to get some lashing but [she was] going to have [her] say." *Id.*

19.     Duke-Koelfgen violated the following ACCD policies and procedures: (1) Faculty Code of Professional Ethics; (2) Bully Free Workplace and Campuses; and (3) College District Vision, Mission, Values and Goals: Respect for All. Her "uncooperative behavior (including disrespectful attitude towards a supervisor)", "failure to follow departmental procedures" and "use of abusive or degrading language not protected by academic freedom" also prompted ACCD's progressive discipline procedure. *Id.*

### *October 25, 2021 Letter*

20.     On October 25, 2021, Duke-Koelfgen was issued a Step 3-Final Written Warning ("October 2021 Letter"). Ex. A-6. The instances speech addressed in the October 2021 Letter are:

iv.     **Emails of September 18 and 19, 2021 to Dr. Irvin, Dean Krueger, and the ACCD Chancellor. Ex. A-6.**

21.     On September 18, 2021, in response to an ongoing internal discussion about another of her students' apparent difficulty paying for one of Duke-Koelfgen's classes, Duke-Koelfgen sent an email to Dr. Irvin, Dean Krueger, and the ACCD Chancellor. In her email, Duke-Koelfgen noted that this student, Emily, was similar to the student she advocated for in the spring of 2021. Duke-Koelfgen asked "why weren't AlamoPromise funds offered to [the student]?" and then continued "she doesn't need to be chided for bordering on a three-peat by our department secretary, and you and I have done what we can to retain her for Flex II or Spring 2022, but the solution to her problem rests higher up the command chain." Duke-Koelfgen also alleged that the failure of ACCD to offer Emily AlamoPromise funds was discrimination and violated her rights to "equal

access to educational opportunities." She ended the email by saying "Administrators have learned nothing from Robert's situation. . . a policy and procedure must be established to avoid these situations because I will fight for students each and every time." *Id.*

22.     On September 19, 2021, Duke-Koelfgen sent another message to Dr. Irvin, Dean Krueger, and the ACCD Chancellor with the subject line "Follow-up Thoughts on Emily and Robert." First, the email began with "Gentlemen (And please note no women are part of this chain of authority) . . . some follow-up thoughts on this recurring situation." Second, Duke-Koelfgen suggested changes to the allocation of AlamoPromise funds as emergency tuition shortfall funds. Duke-Koelfgen argued that her reorganization of AlamoPromise funds would encourage students to give back to ACCD as alumni." *Id.*

     **v.     Email of September 27, 2021 Regarding A Colleague's Heart Attack. Ex. A-6.**

23.     Dr. Irvin, interim chair of the English department, emailed the faculty to notify them of a colleague's heart attack and hospitalization and to request help covering the colleague's classes. *Id.* at ACCD000026. Duke-Koelfgen replied-all:

> Lennie—if this information is not forwarded to the board by our department, then I will do it myself. Vela [president of San Antonio College] DID NOT practice his legal obligation of duty of care to older faculty and those with underlying conditions during the scheduling phase. The result is unconscionable negligence.

24.     Duke-Koelfgen's conduct prompting the October 2021 Letter violated the same ACCD policies as the March 2021 Letter. *Id.*

25.     ACCD required Duke-Koelfgen to complete two LinkedIn Learning trainings, one on anger management and one on developing emotional intelligence. ACCD placed the October 2021 Letter in Duke-Koelfgen's personnel file. *Id.*

26. ACCD did not discipline or otherwise punish Duke-Koelfgen outside of the details provided in the October 2021 Letter. Duke-Koelfgen maintained the same pay, benefits, duties, academic rank, and position. Ex. A, Decl. of R. Cavazos.

***Duke-Koelfgen's Complaint***

27. Duke-Koelfgen filed her Original Complaint on September 14, 2022. Doc. 2.

28. Duke-Koelfgen filed her Unopposed First Amended Complaint on December 28, 2022. Doc. 13. Duke-Koelfgen did not add any new factual allegations.[3] Doc. 13. In fact, the only changes from the Original Complaint to the First Amended Complaint were (1) swapping compensatory damages to nominal damages and (2) removing the request for economic damages. Doc. 2, Doc. 13.

29. The only claim in Duke-Koelfgen's Amended Complaint is "First Amendment Violation." Doc. 13.

30. ACCD filed its Answer to the First Amended Complaint on January 11, 2023 denying Duke-Koelfgen's allegations and asserting affirmative defenses. Doc 14.

31. Now, ACCD files this Motion and requests the Court to grant summary judgment in favor of ACCD on Duke-Koelfgen's claim for First Amendment Violation.

### III. STANDARD OF REVIEW

32. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material ***fact*** and the movant is entitled to judgment as a matter of law."

---

[3] ACCD issued a third written discipline letter to Duke-Koelfgen on September 26, 2022, citing Duke-Koelfgen's failure to (1) adhere to department requirements related to Duke-Koelfgen's English 1302 syllabus, grading deadlines, and response time to student inquiries and (2) meet ACCD's expectations as set out in the March 2021 and October 2021 Letters. Though ACCD issued the third discipline letter after the filing of the Original Complaint, Duke-Koelfgen added no allegations related to it in the First Amended Complaint. Therefore, the third disciplinary is not included in Duke-Koelfgen's claim and ACCD will not address it.

Fed. R. Civ. P. 56 (emphasis added). Where only questions of law—rather than questions of fact—are in dispute, the Court should render judgment as a matter of law. *Id.*

33.     First Amendment protection is an element required to make a prima facie case for First Amendment Violation. Fifth Circuit Pattern Jury Charge (Updated June 2020) at 100–104. Whether a public employee's speech is entitled to First Amendment protection is a question of law for the Court. *Id.* (citing *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019)); *Connick*, 461 U.S. at 148, n7, n10.

34.     The Court must decide two threshold issues to determine whether First Amendment protection applies to a public employee's speech as a matter of law: (1) whether the public employee spoke as a citizen or pursuant to her official duties under *Garcetti*, and (2) whether the public employee's speech is entitled to protection under the *Pickering* balancing test. *Id.*; *See Garcetti*, 547 U.S. at 418; *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Connick*, 461 U.S. at 146, 149–50.

35.     As the threshold issue of First Amendment protection is in dispute and is a question of law, the Court should resolve the issue as a matter of law. *See* Fifth Circuit Pattern Jury Charge (Updated June 2020) at 100–104.

## IV.    GROUNDS FOR SUMMARY JUDGMENT

36.     No dispute of material fact exists on Duke-Koelfgen's First Amendment Violation claim because Duke-Koelfgen cannot establish the first prima facie element of First Amendment protection—a question of law—that she spoke as a citizen. Her communications cited in the discipline documents establish instead that Duke-Koelfgen spoke internally with the administrators in connection with her duties as a public employee. Thus, ACCD is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## V.      ARGUMENTS & AUTHORITIES

37.      The only issue before the Court in this Motion is entitlement to First Amendment protection for Duke-Koelfgen's speech outlined in ACCD's discipline documents, the March 5, 2021 and October 25, 2021 Letters (collectively, the "<u>Speech</u>").

38.      As an initial point, the Court should not consider Duke-Koelfgen's speech about the potential asbestos nor the apparent stench in Gonzales Hall discussed in Plaintiff's First Amended Complaint because both are well outside of the statute of limitations and the First Amended Complaint admits that ACCD did not "administratively punish[]" Duke-Koelfgen for either instance. First Am. Compl. at p. 2. The statute of limitations for a First Amendment violation claim, presumably made pursuant to 42 U.S.C. § 1983, is two years.[4] Duke-Koelfgen's asbestos speech occurred in or around 2017 and she spoke to the press on the stench at Gonzales Hall in December 2019. Ex. A, Decl. of R. Cavazos. Duke-Koelfgen filed her Original Complaint on September 14, 2022, long after the two-year limitations period for events in 2017 and 2019. Therefore, only the Speech described above is relevant.

### A.      The First Amendment Does Not Protect Duke-Koelfgen's Speech Under *Garcetti*.

39.      The First Amendment only protects the Speech of Duke-Koelfgen, as a public employee, if (1) she spoke as a citizen rather than an employee, *and* (2) the Speech was on a "matter of public concern." *See Garcetti*, 547 U.S. at 421 (holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"); *Lane v. Franks*, 573 U.S. 228, 235 (2014) (applying *Garcetti* to analyze

---

[4] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (The general personal injury statute of limitations in the forum state governs the statute of limitations on claims under 42 U.S.C. § 1983); *Pete v. Metcalfe*, 8 F.3d 214, 216–17 (5th Cir. 1993) (The Texas two-year statute of limitations applies to a claim under 42 U.S.C. § 1983).

citizen versus employee speech and then turning to whether the speech was a matter of public concern). If a public employee was not speaking both as a citizen ***and*** on a matter of public concern, then "the employee has no First Amendment cause of action based upon his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418; *Lane*, 573 U.S. at 238–42 (first analyzing whether employee spoke as a citizen and second whether it was a matter of public concern). Here, Duke-Koelfgen's Speech meets neither step. Thus, her Speech is not protected by the First Amendment and her claim fails.

### 1.    Duke-Koelfgen Spoke As An Employee Pursuant to Her Official Duties—Not as a Citizen.

40.    Duke-Koelfgen's First Amendment claim cannot survive the first step of the *Garcetti* inquiry—and thus ends the Court's analysis—because she was not speaking as a citizen. A public employee's First Amendment claim fails when the speech was within the scope of the employee's official duties. *Garcetti*, 547 U.S. at 421. Speech made pursuant to a public employee's job responsibilities is not "citizen" speech. *Id*. Here, Duke-Koelfgen's speech was made in her capacity as an Associate Professor at ACCD and as a faculty member communicating with those to whom she reports directly and indirectly and about matters pertaining to students in a class and the requirement of SLOs. None of Duke-Koelfgen's speech was spoken as a citizen.

41.    The public employee's unprotected speech in *Garcetti* is like Duke-Koelfgen's Speech. In *Garcetti*, a prosecutor prepared a memorandum recommending no charges against a potential defendant because he believed the affidavit used to obtain the search warrant contained misrepresentations by the sheriff's office. *Garcetti*, 547 U.S. at 420. The *Garcetti* Court reasoned that, because the prosecutor's memorandum was "part of what he, as a calendar deputy, was employed to do", he was acting pursuant to his official duties and his employer was entitled to evaluate his performance. *Id*. at 421. The Court concluded that "***[if the prosecutor's] superiors***

***thought his memo was inflammatory or misguided, they had the authority to take proper corrective action***." *Id*. at 423 (emphasis added).

42.      Similarly, Duke-Koelfgen's Speech directly ties to her job duties in that her Speech was pursuant to what she was employed to do, and Duke-Koelfgen's superiors at ACCD found that her Speech required written disciplinary action. Moreover, that no one at ACCD specifically asked Duke-Koelfgen for her thoughts or for any of the Speech is not dispositive. *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) ("[s]imply because [public employee] wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job" because he was trying to execute his duties and expressed concerns about the program he ran).

43.      The Speech described in *infra* ¶¶ 12–19, 26—emails regarding eLumen survey deadlines, the Zoom meeting on accreditation related to eLumen, and the email about covering a sick colleague's classes—are all directly tied to Duke-Koelfgen's responsibility to meet deadlines and collegially participate in inter-departmental and ACCD activities. *See* Ex. A-2, Job Description ("Complete all mandatory performance evaluation measures within specified time limits, e.g., Title IX training"; "Participate in instructional, departmental, or institutional research to improve educational effectiveness"; "Evaluate teaching and assessment practices to continue improving them"; "Participate collegially in department, college, cross-college, discipline-specific, district, and community service activities"); Ex. A-3, Code of Professional Ethics ("The Professional Educator shall work to enhance cooperation and collegiality among students, faculty, administrators, and other personnel."; "The Professional Educator shall treat all persons with respect, dignity, and justice, discriminating against no one on any arbitrary basis such as ethnicity, creed, gender, disability, or age."; "The Professional Educator shall observe the stated policies and

procedures of the college, reserving the right to seek revision in a judicious and appropriate manner.")

44.    The Speech described in *infra* ¶¶ 9–11, 23–24—emails regarding students' difficulty registering and paying for her classes, proposed fixes to ACCD's leadership, ideas on reallocation of ACCD's funds under AlamoPromise, and proposed changes to the Texas Administrative Code's core curriculum to include Duke-Koelfgen's literature classes—are directly tied to Duke-Koelfgen's duty to (1) "participate in the shared governance process to ensure policies and procedures remain focused on maintaining high standards while providing appropriate support for student needs"; (2) "[a]ssist in policy development and other governance matters within one's discipline, department, college, or at district level or across the colleges"; (3) "[c]ollaborate with colleagues both across colleges and within individual departments in the construction and continuous improvement of measurable learning outcomes to include the THECB core curriculum objectives and additional institutional objectives." Ex. A-2, Job Description; *see also* Ex. A-3, Code of Professional Ethics ("The Professional Educator shall observe the stated policies and procedures of the college, reserving the right to seek revision in a judicious and appropriate manner.").

45.    Thus, the Speech at issue is within the scope of Duke-Koelfgen's job duties as a full-time Associate Professor at ACCD—the "critical question" under *Garcetti's* first inquiry— and Duke-Koelfgen was speaking as an employee, not a citizen. *See Lane*, 573 U.S. at 240. Her First Amendment claim thus fails on this ground alone. *Id*. at 237. Therefore, the First Amendment protection analysis ends here and summary judgment is warranted.

### 2. Duke-Koelfgen's Speech was Not on A Matter of Public Concern.

46. Assuming arguendo that the Court were to find that some of Duke-Koelfgen's Speech was made as a citizen rather than as a public employee, none of Duke-Koelfgen's Speech meets the criteria of a matter of public concern. In general, a matter of public concern is related to "can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (citing *Lane*, 572 U.S. at 241). However, not every matter—or criticism of a public official—discussed within a government office is a matter of public concern. *See Connick*, 461 U.S. at 149. "Whether an employee's speech addresses a matter of public concern must be determined by the ***content, form, and context*** of a given statement, ***as revealed by the whole record***." *Connick*, 461 U.S. at 148–49 (emphases added).

47. As an initial point, all of Duke-Koelfgen's Speech—the only speech ACCD disciplined Duke-Koelfgen for—used Duke-Koelfgen's ACCD email address, including the internal ACCD Zoom call, and only reached internal ACCD recipients. Exs. A-4, A-5, A-6. The purely ACCD internal context of Duke-Koelfgen's Speech weighs against finding a matter of public concern. *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 125 (5th Cir. 1991) (finding "the private form and context of Dorsett's speech indicate that the speech did not address a matter of public concern" when professor did not direct his speech outside of the university). Facts also weighing against finding a matter of public concern are: Duke-Koelfgen sent the emails repeatedly, targeted Deans and Chancellors up several levels of the chain of command, sought to aid two individual students that were in her class(es), and devolved into personal opinions and criticisms of ACCD. Exs. A-5, A-6.

48.     Moreover, the infusion of personal opinions and internal grievances also weighs against finding that speech is a matter of public concern. *Connick*, 461 U.S. at 148; *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) ("solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of a manager's status as an arm of government" are not matters of public concern); *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 737–38 (5th Cir. 2015) (characterizing speech that partly involved matters of public concern as a "rant" attacking supervisor's leadership as an internal grievance rather than a matter of public concern). Duke-Koelfgen's Speech either primarily concerned Duke-Koelfgen's issues with the management, leadership, or status quo set by ACCD administration or eventually devolved into a "rant" akin to a personal grievance.

49.     Specifically, (1) the February 11, 2021 replies to Dr. Blackwood and Dr. Irvin regarding eLumen issues, grading deadlines, and suggestion that ACCD should apologize to her (detailed *infra* ¶¶ 12–16), (2) the Zoom call comments about grading deadlines and ACCD not respecting the faculty (detailed infra *infra* ¶¶ 17–19), and (3) email about the scheduling issues causing a colleague's heart attack (detailed *infra* ¶¶ 25) are internal grievances that "if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo." *Connick*, 461 U.S. at 148. None of these emails or Zoom comments are matters of public concern as they only touch upon Duke-Koelfgen's views of managerial troubles and personal opinions. *Connick*, 461 U.S. at 147 (holding "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior").

50.     Similarly, Duke-Koelfgen's speech that may touch on matters of public concern, taken in view of the entire record, including the content, form, and context, are not matters of public concern and are motivated by her personal grievances. *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993) (per curiam), *cert. denied*, 510 U.S. 1072, 127 L. Ed. 2d 76, 114 S. Ct. 881 (1994) (noting that the inquiry is the "hat worn" by the employee rather than the importance of the issue). As to the February 2021 emails detailed *infra* ¶¶ 9–11 and September 2021 emails detailed *infra* ¶ 25 regarding access to literature classes for students and the reallocation of ACCD's AlamoPromise funds, issues about education and funding have previously been found to be matters of public concern. *Pickering*, 391 U.S. at 571. However, given the overall context of the speech, it is clear that it did not involve matters of public concern. *Dorsett*, 940 F.2d at 124 (assessing the "primary motivation" of the speaker).

51.     Specifically, Duke-Koelfgen's repetitive three emails on the same topic between February 10 to February 12, 2021, and two emails September 18-19, 2021, included personal opinions and ACCD administrative issues. For example, on personal opinions: "This doesn't provide a solution for Robert this semester; it just throws the blame on him"; "this very nice email does not solve the problem—not Robert's problem and not the problem for 'access to literature course for all students.'"; "Now take care of Robert. Enough passing the buck around."; seeking relief for a single student "IMMEDIATELY, THIS SEMESTER . . . a U.S. military veteran who cannot take an American literature course is the height of dysfunction . . . consult with Lumina. Perhaps they will see the error of their ways"; "Gentlemen (And please note no women are part of this chain of authority)"; "We need to shift, then, from a patriarchal authoritarian style of leadership to a more equitable model for students, staff, and faculty. The educational reforms we

chase after cannot be achieved unless we move away from a corporate profit business model."
Exs. A-4, A-5, A-6.

52.     Duke-Koelfgen also included her ACCD administrative complaints: "literature
courses are pooled into one category and then denied to students because financial aid won't pay
for a course that doesn't transfer"; "Literature courses are stacked up in Core 40 and don't transfer
. . . African American literature hasn't been taught in a decade"; "[with her suggestions]
AlamoPromise helps both rather than adhering to the Lumina model that is inherently
discriminatory under federal regulations"; "she doesn't need to be chided for bordering on a three-
peat by our department secretary"; "administrators have learned nothing from Robert's situation";
"a policy and procedure must be established to avoid these situations because I will fight for
students each and every time." Exs. A-4, A-5, A-6.

53.     In sum, the specific, contextual "matter of public concern" analysis required reveals
that Duke-Koelfgen's speech was not on matters of public concern and therefore, her Speech is
not protected by the First Amendment and the Court need not reach the *Pickering* balancing test
to grant summary judgment.

**B.      Should the Court Reach the Issue, ACCD's Interests Outweigh Duke-Koelfgen's
         Under the *Pickering* Balancing Test.**

54.     Finally, if the Court were to find that Duke-Koelfgen's Speech is protected under
the First Amendment because she spoke as a citizen on a matter of public concern, summary
judgment is still mandated under the *Pickering* balancing test because ACCD's legitimate interest
in an efficient workplace with proper discipline outweighs Duke-Koelfgen's interest in her Speech.

55.     Under *Pickering*, when a public employee's speech is protected under the First
Amendment, the Court must balance the government's interest as an employer that is entitled to
"wide discretion and control over the management of its personnel and internal affairs" including

discipline of employees that "adversely affect discipline and morale in the [workplace], foster disharmony, and ultimately impair the efficiency of an office or agency" versus the employee's First Amendment rights. *Connick*, 461 U.S. at 151 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 168 (1974)); *Pickering*, 391 U.S. at 568.

56.     In every single instance of her Speech, Duke-Koelfgen confronted her supervisors, including her direct supervisor and supervisors several tiers above her. "When a government employee personally confronts [her] immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered." *Connick*, 461 U.S. at 152 (internal citations omitted). Here, the manner, time, and place of Duke-Koelfgen's Speech weighs in favor of ACCD.

57.     Duke-Koelfgen's Speech involved reply-alls to email chains and interruptions of groups of faculty over email and over a Zoom call. Exs. A-4, A-5, A-6. Moreover, her aggressive manner—"I want an apology from both of you and a simple acknowledgement that I accomplished the impossible last semester . . . Faculty do not receive enough support from administrators. Reflect on mistakes administrators make before requiring meetings left and right. Faculty are actually busy teaching. Without them, there is no college. Pull your head up from reports and start seeing faculty as human beings just as you ask us to see our students"—and outright insubordination—responding "not meeting with anyone" to Dr. Blackwood's instruction to attend a meeting—undermines ACCD's morale and fosters disharmony. Exs. A-4, A-5, A-6 (also Duke-Koelfgen's all-caps "IMMEDIATELY, THIS SEMESTER" to ACCD's general counsel and "Now take care of Robert. Enough passing the buck around" to ACCD's Chancellor).

58.     Moreover, Duke-Koelfgen cannot point to factors weighing in her favor, much less overriding, ACCD's interest in issuing written discipline to Duke-Koelfgen to promote efficiency

and internal harmony at ACCD. *See* Ex. A-3, Code of Professional Ethics ("The Professional Educator shall work to enhance cooperation and collegiality among students, faculty, administrators, and other personnel.").Therefore, Duke-Koelfgen's claim for First Amendment Violation fails once again and the Court should grant summary judgment.

## VI.     CONCLUSION

Defendant Alamo Community College District (AKA Alamo Colleges District) respectfully requests the Court to grant this Motion for Summary Judgment, and enter final judgment disposing of all claims and all parties, ordering that Plaintiff Donna Duke-Koelfgen take nothing from her First Amendment Violation claim, awarding attorneys' fees and costs to Defendant, and any other relief to which Defendant may show itself entitled.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*/s/ Mario A. Barrera*

Mario A. Barrera
State Bar No.  01805915
mario.barrera@nortonrosefulbright.com
Hannah Hoke Hylbert
State Bar No. 24125790
hannah.hylbert@nortonrosefulbright.com
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, TX  78205
Telephone:     (210) 224-5575
Facsimile:      (210) 270-7205

*Attorneys for Alamo Community College District*

## <u>CERTIFICATE OF SERVICE</u>

Defendant Alamo Community College District's Motion for Summary Judgment has been served in compliance with Federal Rules of Civil Procedure by Electronic Service, on this 15th day of September, 2023:

> Morteza Benjamin Karimi
> 3559 Lake Austin Blvd., Apt. E
> Austin, Texas  78703
> benjamin.karimi@attorneykarimi.com



*/s/ Mario A. Barrera*
Mario A. Barrera