UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DONNA DUKE-KOELFGEN,

    *Plaintiff*,

v.                              Case No.  SA-22-CV-01010-JKP

ALAMO COLLEGES DISTRICT,

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alamo Community College District's (ACCD) Motion for Summary Judgment. *ECF Nos. 19,23*. Plaintiff Donna Duke-Koelfgen responded. *ECF No. 21*. Upon consideration, the Motion is **GRANTED**.

### Undisputed Facts

ACCD is a public college district, and thereby, a governmental entity and political subdivision of the State of Texas. *See* Tex. Educ. Code §§ 130.0011. Duke-Koelfgen is an employee with ACCD since 1993 and is currently employed as a tenured Associate Professor of composition and literature in San Antonio College's English Department.

Full-time faculty members at San Antonio College are professional educators subject to the policies of ACCD's Board of Trustees, including the Faculty Code of Professional Ethics. *ECF No. 19, exh. A-2, Job Description; exh. A-3, Code of Professional Ethics*. The main categories of job duties for full-time faculty members include: (1) managing classes and learning environments, (2) delivering effective instruction, (3) assessing student learning, (4) promoting continual improvement as part of the cycle of teaching and learning, (5) supporting learning through

student engagement, (6) providing student advisement, (7) pursuing professional development, and (8) participating collegially in department and ACCD activities. Ex. A-2. In addition, full-time faculty must "participate in the shared governance process to ensure policies and procedures remain focused on maintaining high standards while providing appropriate support for student needs." *Id*.

In her Amended Complaint, Duke-Koelfgen asserts one cause of action against ACCD: violation of her right to free speech protected by the First Amendment and asserted pursuant to 42 U.S.C. § 1983. *ECF No. 13, pp. 2-3*. As basis for this cause of action, Duke-Koelfgen asserts she received improper disciplinary actions resulting from her exercise of free speech.[1] *Id*.

Although the two pertinent disciplinary actions, as revealed in the summary judgment evidence, pertain to several infractions by Duke-Koelfgen, she bases her cause of action on three "issues" contained within the two disciplinary actions. *Id*. The first disciplinary action titled "Written Reprimand-Step 2" was administered on March 5, 2021. *Id.; ECF No. 19, exh. A-4*. The second disciplinary action titled "Step 3-Final Written Warning" was administered on October 25, 2021. *ECF No. 13, p. 3; ECF No. 19, exh. A-4*. The first "issue" upon which Duke-Koelfgen bases her cause of action derives from portions of the first and second disciplinary action; the second "issue" derives from the second disciplinary action, and; the third "issue" derives from the second disciplinary action. *Id*. The Court will limit analysis of Duke-Koelfgen's cause of action to only the three "issues" she presents.

---

[1] Duke-Koelfgen's Amended Complaint provides vague and somewhat ambiguous description of the disciplinary actions, as well as the supporting facts and actions, upon which she bases her cause of action. Pp. 2-3. ACCD provides documentation of these disciplinary actions in its undisputed summary judgment evidence. Because Duke-Koelfgen does not dispute this summary judgment evidence, the Court begins with Duke-Koelfgen's allegations in the Amended Complaint and then derives a complete and accurate description of the disciplinary actions and the facts from which they arose.

Duke-Koelfgen bases her first issue upon a portion of the March disciplinary action titled, "While advocating for a student, you engaged in unprofessional written communication and behavior" and a portion of the second disciplinary action titled "Failure to Follow Chain of Command and Unprofessional Communication." *ECF No. 13, p. 3; ECF No. 19, exh. A-4., pp. 32, 48*. Both infractions were based upon the same behavior which occurred on two occasions and which was perceived to be improper.

The first infraction which serves as basis for the first issue and which is cited within the first disciplinary action was an email communication chain Duke-Koelfgen sent between February 9 and 12, 2021 to Dean of Student Success Dr. Tiffany Cox, San Antonio College President Robert Vela, Vice President of Student Success Dr. Lisa Alcorta, and an email she sent to ACCD General Counsel Ross Laughead on February 12, 2021. *ECF No. 13, pp. 2-3; ECF No. 19, exh. A-4., pp. 32-46.* This February email exchange was about a specific student, Robert, who was forced to drop Duke-Koelfgen's class involuntarily. *Id*. Duke-Koelfgen also addressed and called for correction of the triggering systemic problem she perceived, that is, financial aid funds from AlamoPromise were not available to students to take her class if the class was not part of their degree plan. *Id*. In a separate email to Dr. Vela dated February 12, 2021, Duke-Koelfgen wrote "[t]he Core 10 Communication category must be expanded to nine credits to include a literature course of the students choosing. *Id*. This change is the only way to ensure students their legal right to educational opportunity . . ." Duke-Koelfgen states the current restriction of financial aid funds "disenfranchise[es] students and depriv[es] students of the necessary skills and knowledge to complete all college-level courses." *Id*. Duke-Koelfgen stated, "I have emailed the Lieutenant Governor, the House Higher Education Committee, and the Senate Education Committee and

ended her email to Dr. Vela with "Now take care of Robert. Enough passing the buck around . . ." *Id.*

The second infraction which serves as basis for the first issue and which is cited within the second disciplinary action is also based upon emails Duke-Koelfgen sent on September 18 and 19, 2021, to Interim Chair of the English Department Dr. Lennie Irvin, Dean of Academic Success Conrad Krueger, San Antonio College President Dr. Robert Vela, and Alamo Colleges District Chancellor Dr. Mike Flores. *ECF No. 13, pp. 2-3; ECF No. 19, exh. A-6., pp. 48-53.* These emails pertained to the same systemic issue as before, but a different student. *Id.* In this email, Duke-Koelfgen expresses her frustration with the student being dropped from her class and the failure to use AlamoPromise funds to ensure students can pay for her class. Duke-Koelfgen contends this student was denied financial resources from AlamoPromise funds based upon her race. *Id.*

The second "issue" is based upon a portion of the second disciplinary action, titled "Aggressive and Unprofessional Communication. *ECF No. 13, p. 3; ECF No. 19, exh. A-6., pp. 48-53.* This issue is also based upon the September 2021 emails Duke-Koelfgen sent. For this disciplinary action, Dr. Irvin interpreted Duke-Koelfgen's action of copying all other staff in her emails and her disrespect of her supervisor by threatening to lodge a complaint on the student's behalf as aggressive, inappropriate and unprofessional. *ECF No. 19, exh. A-6., pp. 48-50.*

The third "issue" is based upon a portion of the second disciplinary action titled "Unprofessional Communication" and is based upon a "Reply All" email Duke-Koelfgen sent on September 27, 2021. *ECF No. 13, p. 3; ECF No. 19, exh. A-6., pp. 48-53.* The email exchange began when Dr. Irvin sent an email to all professors in the English Department asking if any could cover classes for a colleague who was in the hospital and would probably not return. In her Reply,

Duke-Koelfgen stated, "Lennie-If this information is not forwarded to the [Board of Trustees] by our department, then I will do it myself. Vela DID NOT practice his legal obligation of duty of care to older faculty and those with underlying conditions during the scheduling phase. The result is unconscionable negligence." *Id.* Duke-Koelfgen vaguely alleges the disciplinary action "states that [she] 'publicly blamed' the college president for the health condition of that sick faculty member." In this disciplinary action, Duke-Koelfgen was cited for "unthoughtful and unprofessional communication," making "unfounded and unprofessional accusations against senior leadership," and for being "disrespectful." *Id.*

As a result of the first disciplinary action, ACCD encouraged Duke-Koelfgen to utilize the counseling services available, required specific changes in behavior, required Duke-Koelfgen to take training courses from LinkedIn Learning titled: "Communicating with Diplomacy and Tact," "Developing Self Awareness," "Teaching Civility in the Workplace," and "Interpersonal Communication," and required Duke-Koelfgen to email an apology to twenty-five ACCD staff while copying the email to Interim Chair Dr. Irvin and ACCD President Dr. Robert Vela. *ECF No. 19, exh. A-4., pp. 34-35.* As a result of the second disciplinary action, ACCD required Duke-Koelfgen to take training courses titled, "LinkedIn Learning: Anger Management" and "LinkedIn Learning: Developing Your Emotional Intelligence." Duke-Koelfgen was warned she could be terminated or otherwise disciplined if she continued similar behavior. *ECF No. 19, exh. A-6., p. 50.* ACCD placed documentation of both disciplinary actions in Duke-Koelfgen's employment record. Duke-Koelfgen maintained the same pay, benefits, duties, academic rank, and position following both actions.

Duke-Koelfgen filed this action against ACCD on September 14, 2022. *ECF No. 1.* Duke-Koelfgen alleges in her Amended Complaint her actions that are the subject of this suit

were protected speech, and, as a result, ACCD unlawfully disciplined and punished her by requiring her to take the online training courses, requiring her emailed and approved apology, and placing these infractions in her employment record. *ECF No. 19*. As relief, Duke-Koelfgen seeks nominal damages, punitive damages, attorney fees, and permanent removal of all disciplinary infractions from her employment records. ACCD seeks summary judgment.

## Legal Standard

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[2] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary

---

[2] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## Arguments

In its Motion for Summary Judgment, ACCD contends it is entitled to summary judgment on Duke-Koelfgen's cause of action because the undisputed facts and evidence reveal that each instance ("issue") of alleged free speech for which Duke-Koelfgen received a disciplinary action was made pursuant to her job duties as a public employee, not as a citizen, and the speech referred to a matter of internal operations and policy, not a matter of public concern. *ECF No. 19*. Because the speech was made as a public employee on a matter of internal operations, ACCD contends Duke-Koelfgen's speech is not protected under the First Amendment, and because the issue whether her speech was made as an employee is a question of law, her cause of action must fail as a matter of law. *Id*. Additionally, ACCD contends that should the Court reach the issue, Duke-Koelfgen's cause of action must fail because no genuine issue of material fact exists on the final element, that is, ACCD's interest as an employer outweighs her interest in free speech. *Id*.

Duke-Koelfgen responds, contending the subject speech pertained to her advocating for students' access to education, her belief that certain funds were not being made available to a student due to race, and her belief that ACCD was negligent in failing to accommodate an elderly and ill professor. *ECF No. 21*. Duke-Koelfgen contends that in all email communications

8

forming the basis of the two disciplinary actions, she spoke as a member of the public on issues of public concern, not as a public-employee professor within the line of her duties. *Id*. Duke-Koelfgen contends ACCD failed to show her job duties entail the subject speech and provides an affidavit swearing to this contention. *Id*. Duke-Koelfgen provides no other summary judgment evidence to dispute that provided by ACCD or in support of her cause of action. *Id*. Duke-Koelfgen contends any effect of her exercise of free speech would be of no consequence or relation to her professional role at ACCD. *Id*. In addition, Duke-Koelfgen contends that because her comments were made through email to ACCD faculty and staff, only, her free speech caused no disruption in ACCD business and was protected by the First Amendment as a matter of law. *Id*.

**Discussion**

The parties do not dispute that ACCD is a state actor/employer, and Duke-Koelfgen is a public employee, and the parties do not dispute her allegations must be analyzed under the First-Amendment legal framework pertinent to a public employee in academia.

The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern. Similarly, "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006)(quoting *Connick v. Myers,* 461 U.S. 138, 142 (1983). While classroom discussion is a uniquely protected activity under the First Amendment, this protection has limits: "[s]tudents, teachers, and professors are not permitted to say anything and everything simply because the words are uttered in the classroom context." *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019).

To prove a cause of action for violation of the First Amendment right to free speech pursuant to § 1983, an employee of a public university must establish: "(1) they were disciplined or

fired for speech that is a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech." *Buchanan*, 919 F.3d at 853 (citing *Connick v. Myers*, 461 U.S. 138, 147–50 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The first prong is a question of law, and therefore, may serve as basis for summary-judgment disposition. *Buchanan*, 919 F.3d at 853. The second inquiry into whether a plaintiff's interests in speaking outweigh a university's interest in regulating speech is a factual determination conducted under the well-known *Pickering-Connick* balancing test. *Id*.

Generally, determination whether speech touches upon a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Buchanan*, 919 F.3d at 853 (quoting *Connick*, 461 U.S. at 147–48). Speech may involve a matter of public concern when it involves "an issue of social, political, or other interest to a community." *Id.* (quoting *Adams v. Trustees of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 564 (4th Cir. 2011). Within the context of academia, however, when a professor makes statements pursuant to their official duties, the professor is not speaking as a citizen within the context of First-Amendment analysis, and "the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421. Following *Garcetti,* when the speech occurs within the public academic setting, before reaching the two-pronged First-Amendment analysis, the Court must add a threshold layer to determine whether the subject speech falls within the context of a professor's performance of their job duties, that is within the context of the employment realm. *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008); *Williams v. Dallas Indep. Sch. Dist,* 480 F.3d 689, 693 (5th Cir. 2007). If it does, the speech is not protected by the First Amendment, and the Court does not reach any First-Amendment protection analysis. *Garcetti* 547 U.S. 410,  (2006); *Davis v. McKinney*, 518 F.3d at 312.

1. **Threshold Prong: Whether the Subject Speech was Made in the Course of Duke-Koelfgen's Performance of Her Job Duties**

"Activities undertaken in the course of performing one's job are activities pursuant to official duties." *Williams v. Dallas Indep. Sch. Dist,* 480 F.3d at 693; *Papagolos v. Lafayette Cnty. Sch. Dist.*, 972 F. Supp. 2d 912, 924 (N.D. Miss. 2013), amended on reconsideration (Nov. 13, 2013). "[E]ven if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties," that is, statements made in the course of performing one's job are not protected." *Williams,* 480 F.3d at 692*; Elizondo v. Parks,* 431 Fed.Appx. 299, 303–04 (5th Cir. 2011).

"[T]he inquiry is a 'practical one,' and the controlling factor is whether the plaintiff's expressions were made pursuant to one of the numerous duties for which the plaintiff was employed." *Williams,* 480 F.3d at 692 (citing *Garcetti,* 547 U.S. at 424). For this initial inquiry, a court's focus is not on the speech's content, but rather "the role the speaker occupied when [s]he said it." *Id.* To make this determination whether speech falls within the scope of a public professor's job responsibilities, "[f]ormal job descriptions, although relevant, are not dispositive, as they 'often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.'" *Elizondo,* 431 Fed.Appx. at 303 (quoting *Garcetti,* 547 U.S. at 424–25). Courts may review a number of factors on this point, including the internal versus external nature of the speech, the employee's formal job description, whether the employee spoke on the subject matter of his or her employment, and whether the speech resulted from special knowledge gained as an employee. *Elizondo,* 431 Fed.Appx. at 303; *Williams,* 480 F.3d at

692; *Davis,* 518 F.3d at 313; *Charles v. Grief,* 522 F.3d 508, 513 (5th Cir. 2008); *Johnson v. Hurtt*, 893 F. Supp. 2d 817, 829 (S.D. Tex. 2012).

2.    **Application**

With this framework, the Court turns to Duke-Koelfgen's Amended Complaint to determine whether the specific email communications supporting her first and second disciplinary actions were made in furtherance of her duties as an Associate Professor. If answered in the affirmative, then Duke-Koelfgen's speech is not protected by the First Amendment and is, therefore, subject to disciplinary action. *See id.*

a.  **First and Second "Issues"**

The portions of the two disciplinary actions that support Duke-Koelfgen's first and second "issues" of alleged violation of her right to free speech arise from Duke-Koelfgen's email communications to various ACCD administration members, supervisors, and staff. These emails are outlined in detail above, and both pertain to Duke-Koelfgen's advocacy regarding students' difficulty registering and paying for her classes, ideas on reallocation of AlamoPromise funds, and proposed changes to the Texas Administrative Code's core curriculum to include Duke-Koelfgen's literature classes.

Before reviewing the speech's content, the Court first focuses on the role Duke-Koelfgen occupied when she sent the emails. Review of the emails reveals Duke-Koelfgen sent them to internal administration, supervisors, and staff in her capacity as an Associate Professor and addressing a frustration and needed improvement within the college to better serve its students. These factors indicate Duke-Koelfgen made the subject speech in the capacity of the job she was employed to do, and in her role as a professor, not as a member of the public. Duke-Koelfgen's emails were sent internally, only, not publicly, pertained to her advocacy of her students as a pro-

fessor, which was the subject matter of her employment, and the subject speech resulted from special knowledge gained as an employee. Duke-Koelfgen communicated only with internal employees to whom she reported directly and indirectly and pertained to matters affecting her students and potential students. All of these factors weigh in favor of finding the speech occurred within her performance of job duties, and thus, is not protected by the First Amendment.

Further, the subject speech was directly tied to duties outlined in her job description requiring she: (1) "participate in the shared governance process to ensure policies and procedures remain focused on maintaining high standards while providing appropriate support for student needs"; (2) "[a]ssist in policy development and other governance matters within one's discipline, department, college, or at district level or across the colleges"; and (3) "[c]ollaborate with colleagues both across colleges and within individual departments in the construction and continuous improvement of measurable learning outcomes to include the THECB core curriculum objectives and additional institutional objectives." *ECF No. 19, exh. A-2, Job Description; see also exh. A-3, Code of Professional Ethic*. Therefore, the subject speech falls within the scope of Duke-Koelfgen's job duties as a full-time Associate Professor at ACCD, a "critical question" which weighs in favor of finding the speech occurred within her performance of job duties, and thus, is not protected by the First Amendment.

For these reasons, the Court concludes Duke-Koelfgen's speech, which is the subject of her first and second "issues" and which form the basis of her cause of action, was made in her capacity as an Associate Professor at ACCD. Since Duke-Koelfgen's claim fails at this threshold inquiry, the Court does not reach the two-pronged analysis whether this speech is protected by the First Amendment. ACCD is entitled to summary judgment as a matter of law on Duke-

Koelfgen's First Amendment cause of action based upon the speech forming the basis of her first and second "issues."

### b. Third "Issue"

The "third" issue pertains to a portion of the second disciplinary action which Duke-Koelfgen emailed various ACCD administration members, supervisors, and staff and which is outlined in detail above. This email pertained to Duke-Koelfgen's expressed frustration and perception of malfeasance of ACCD in failing to accommodate a professor, causing his illness and eventual death.

First, review of the emails sent by Dr. Irvin and Duke-Koelfgen's response reveals they were sent internally, only, beginning with the phrase, "Dear colleagues." Without focusing on the substantive content of the email exchange as a weighted factor, the email could not plausibly be considered to possess an external nature because it was sent to seek remedy of an internal coverage issue. Duke-Koelfgen responded in her capacity as an English Department professor. Duke-Koelfgen expressed her frustration and needed improvement within the college to better serve its professors.

These factors indicate Duke-Koelfgen made the subject speech in the capacity of the job she was employed to do, and in her role as a professor. All of these factors weigh in favor of finding Duke-Koelfgen's email fell within the scope of her job responsibilities and occurred within her performance of job duties.

For these reasons, the Court concludes Duke-Koelfgen's speech, which is the subject of her third "issue" and which form the basis of her cause of action, was made in her capacity as an Associate Professor at ACCD. Since Duke-Koelfgen's claim fails at this threshold inquiry, the Court does not reach the two-pronged analysis whether this speech is protected by the First

Amendment. ACCD is entitled to summary judgment as a matter of law on Duke-Koelfgen's First Amendment cause of action based upon the speech forming the basis of her third "issue."

## Conclusion

Because the Court concludes the subject speech occurred within the employment realm within Duke-Koelfgen's performance of her job duties, the Court does not reach the analysis to determine if the subject speech was protected by the First Amendment. ACCD is entitled to summary judgment on Duke-Koelfgen's cause of action as a matter of law. The Court GRANTS ACCD's Motion for Summary Judgment on Duke-Koelfgen's cause of action for violation of her right to free speech protected by the First Amendment.

The Clerk of Court is directed to close the case. The Court will issue a Final Judgment by separate filing.

It is so ORDERED.
SIGNED this 1st day of November, 2023.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE